**SO ORDERED.**

**SIGNED this 14 day of January, 2013.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| | |
| **BRIER CREEK CORPORATE CENTER ASSOCIATES LIMITED PARTNERSHIP, et. al.,** | **12-01855-SWH** |
| | |
| DEBTORS | |

### ORDER STAYING ARBITRATION AGAINST ARBITRATION RESPONDENTS PENDING HEARING ON CONFIRMATION

The matter before the court is the Motion for Order Extending Automatic Stay to Arbitration filed by the debtors[1] on January 2, 2013. A hearing was held in Raleigh, North Carolina, on January 10, 2013. For the following reasons, the debtors' motion is granted.

---

[1] The debtors are Brier Creek Corporate Center Associates Limited Partnership; Brier Creek Office #4, LLC; Brier Creek Office #6, LLC; Service Retail at Brier Creek, LLC; Service Retail at Whitehall II Limited Partnership; Shopton Ridge 30-C, LLC; Whitehall Corporate Center #4, LLC; Whitehall Corporate Center #5, LLC; and Whitehall Corporate Center #6, LLC.

**BACKGROUND**

On October 13, 2011, the debtors and other affiliated entities[2] (the "Plaintiffs") filed a complaint in state court alleging fifteen claims for relief against Bank of America, N.A. ("Bank of America") relating to certain loans made by Bank of America to the debtors. On January 13, 2012, Bank of America responded to the complaint by denying liability as to all fifteen claims and asserting its own claims against the Plaintiffs including those that guaranteed the note obligations. On March 9, 2012, the debtors filed for relief under Chapter 11 of the Bankruptcy Code. By order entered on March 23, 2012, the debtors' cases were consolidated and are currently being jointly administered for procedural purposes only[3] (the "Bankruptcy Case").

On April 5, 2012, Bank of America filed a Motion to Compel Arbitration and Stay Proceedings in this case relating to the state court litigation. On May 7, 2012, the Plaintiffs removed the litigation to the United States Bankruptcy Court for the Western District of North Carolina. By an order entered on June 18, 2012, the litigation was transferred to this court resulting in the initiation of an adversary proceeding on June 19, 2012 (the "Adversary Proceeding"). On November 29, 2012, a hearing was held in Raleigh, North Carolina, on Bank of America's Motion to Compel Arbitration and Stay Proceedings, now related to the Adversary Proceeding. A ruling on that motion is still pending.

---

[2]The other affiliated entities are Cary Creek Limited Partnership; Shopton Ridge Business Park Limited Partnership; AAC Retail Property Development and Acquisition Fund, LLC; American Asset Corporation Companies Limited; and American Asset Corporation. Cary Creek Limited Partnership filed a voluntary petition on January 3, 2013.

[3]By order entered on January 10, 2013, the bankruptcy case of Cary Creek Limited Partnership was consolidated with the other debtors's cases and all of the cases are now being jointly administered for procedural purposes only.

On December 7, 2012, Bank of America filed a separate demand for arbitration with the American Arbitration Association against Riprand Count Arco, Paul L. Herndon, Michael J. Fahey, Amommarc II, LLC, Brian C. Briody, Barry R. James, Duncan H. Lewison, and Petr Vasicko (the "Arbitration Respondents"). With the exception of Amommarc II, LLC, each of the Arbitration Respondents is either a current or former officer of American Asset Corporation ("AAC"), one of the Plaintiffs and an affiliate of the debtors. AAC is the property manager of the debtors and oversees the day-to-day management and development of the debtors' properties.

On January 2, 2013, the debtors' filed their motion in the Bankruptcy Case seeking a stay of the arbitration brought by Bank of America against the Arbitration Respondents. The motion requests that an order be entered pursuant to 11 U.S.C. §§ 362 and 105 (1) confirming that the automatic stay applies to the arbitration filed by Bank of America against the Arbitration Respondents and (2) temporarily staying the prosecution of that arbitration pending a hearing on confirmation of the debtors' plan of reorganization.

## JURISDICTION

"Core matters . . . are proceedings that 'arise under' or 'arise in' a case under the Bankruptcy Code." SunTrust Bank v. Roberson (In re Baseline Sports, Inc.), 393 B.R. 105, 121 (Bankr. E.D. Va. 2008). "Jurisdiction for cases 'arising under title 11' refers to those cases in which the Bankruptcy Code itself creates the plaintiff's cause of action or 'if the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal bankruptcy law." Kubasko v. Allied Prof'ls Ins. Co. (In re Werness), 2012 Bankr. LEXIS 3603, at *6-7 (Bankr. E.D.N.C. Aug. 6, 2012). A request for relief under 11 U.S.C. § 362(a)(1) to determine that the stay applies to non-debtors and a request for relief under 11 U.S.C. § 105 to extend the stay to non-debtors

3

constitute core proceedings arising under title 11 for which this court has jurisdiction to hear and decide.

## DISCUSSION

The Fourth Circuit in Piccinin recognized four grounds, either statutory or equitable, on which a bankruptcy court may enjoin litigation against non-debtors. A. H. Robins Co. v. Piccinin, 788 F.2d 994, 999-1004 (4th Cir. 1986), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986). They are: (1) the automatic stay under 11 U.S.C. § 362(a)(1); (2) the automatic stay under 11 U.S.C. § 362(a)(3); (3) the bankruptcy court's powers under 11 U.S.C. § 105; and (4) the bankruptcy court's general equity powers under its comprehensive jurisdiction conferred by 28 U.S.C. § 1334. Id. Some will not be relevant depending on the circumstances, and they each require a separate analysis. Id. at 1003-04. In bringing the instant motion, the debtors are relying on the stay pursuant to 11 U.S.C. § 362(a)(1) and the court's powers under 11 U.S.C. § 105 to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

As a preliminary matter, the court must first address Bank of America's argument that the debtors' motion is procedurally improper because the relief sought must be made by bringing an adversary proceeding. Seeking a determination that the stay under 11 U.S.C. § 362(a)(1) applies is properly made by motion and does not require the initiation of an adversary proceeding. On the other hand, requesting an injunction pursuant to the court's powers under 11 U.S.C. § 105 must ordinarily be sought through an adversary proceeding. Fed. R. Bankr. P. 7001(7); In re Residential Capital, LLC, 480 B.R. 529, 538 (Bankr. S.D.N.Y. 2012). However, despite the requirement for an adversary proceeding, "courts in many instances have found that judicial economy permits the courts

to look beyond Rule 7001 to the merits of the dispute provided no prejudice will result." In re Service Merchandise Co., 256 B.R. 755, 765-66 (Bankr. M.D. Tenn. 2000) (citing In re Orfa Corp of Philadelphia, 170 B.R. 257, 275-76 (E.D. Pa. 1994)).

The debtors' request for relief was brought by a motion filed in the Bankruptcy Case as opposed to the Adversary Proceeding. The motion was procedurally proper with respect to whether the stay under 11 U.S.C. § 362(a)(1) applies. Although an adversary proceeding is the correct procedural method to request an injunction pursuant to 11 U.S.C. § 105, the court finds that the interests of judicial economy and the lack of prejudice to Bank of America[4] permits the court to address the merits of whether an injunction should be granted.

Since the debtors' motion is not procedurally deficient, the court will now address whether the stay under 11 U.S.C. § 362(a)(1) applies to the Arbitration Respondents. As stated by the Fourth Circuit in Piccinin, there is a narrow exception to the general rule that a stay under 11 U.S.C. § 362(a)(1) only applies to debtors and not third-party defendants or co-defendants. 788 F.2d at 999. The exception exists only in "unusual circumstances," and it requires "something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy." Id. In providing an example of such "unusual circumstances," the court wrote:

---

[4]Bank of America asserts that the requirement of an adversary proceeding should not be waived because it requires the court to determine whether it has jurisdiction, whether the matter is core or non-core, and whether an injunction requires additional procedural protections such as the posting of a bond. However, the court has addressed the issues pertaining to jurisdiction and whether the matter is core or non-core. Further, when a preliminary injunction is sought by a debtor-in-possession, Bankruptcy Rule 7065 does not require the posting of a bond. Fed. R. Bankr. P. 7065 ("Rule 65 F.R. Civ. P. applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee or debtor in possession without compliance with Rule 65(c)."). Finally, the court notes that during the hearing counsel for the Plaintiffs made an oral motion in the Adversary Proceeding requesting a stay of the arbitration against the Arbitration Respondents.

> An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute. This fact was recognized by the court in In Re Metal Center, 31 Bankr. 458 (D. Conn. 1983).

Piccinin, 788 F.2d at 999.

The court then went into detail explaining the Metal Center decision in an effort to further clarify the type of "unusual circumstances" where the stay would apply to non-debtors. Id. at 999-1000. In Metal Center, the plaintiff sued the debtor and its guarantor in state court. In re Metal Center, 31 B.R. 458, 459 (D. Conn. 1983). The debtor filed for relief under Chapter 11 of the Bankruptcy Code, but the plaintiff tried to continue its state court action against the guarantor. Id. The court decided that the guarantor was not protected by the automatic stay because the debtor would not be bound by any judgment the plaintiff might obtain against the guarantor in state court. Id. at 463. However, it ultimately enjoined the state court action against the guarantor, stating that "the interests of equity and judicial economy dictate that the issues between the debtor, Plessey [the plaintiff] and Gardner [the guarantor] be litigated in the same forum. Metal Center, 31 B.R. at 463.

Although the Metal Center court declined to apply the stay under 11 U.S.C. § 362(a)(1) to the state court litigation against the guarantor, the Fourth Circuit in Piccinin provided insight into how it would likely have decided the case:

> It is true that, although the third-party defendant in Metal Center was found to be entitled to indemnity from the debtor, the court held that the situation was not such as to qualify for a stay under section 362(a)(1). The court reached this conclusion because in its opinion the judgment in the suit against the third-party would not be binding on the bankruptcy court. Of course, if the indemnitee, who has suffered a judgment for which he is entitled to be absolutely indemnified by the debtor, cannot file and have allowed as an adjudicated claim the actual amount of the judgment he has secured but must submit his claim for allowance in the bankruptcy proceeding with the prospect that his claim may not be allowed in the full amount of the judgment awarded in favor of him, the indemnitee will be unfairly mulcted by

6

>inconsistent judgments and his contract of indemnity in effect nullified. We do not accept such reasoning with its shocking result *and would find a stay under (a)(1) acceptable*. Apparently the court in Metal Center recognized the inconsistency and the injustice resulting from its refusal to sustain a stay under (a)(1) for it did grant a stay of the action against the third-party but on equitable grounds, finding in justification that "severing and remanding [the plaintiff's action against the indemnitee to the state court for trial and judgment would] . . . potentially expose Gardner [the indemnitee] to inconsistent judgments. (citing Metal Center, 31 B.R. at 463). While, as we have said, *it seems that a ruling sustaining the stay in that case under section 362(a)(1) would have been more logical and appropriate*, it is unimportant whether the stay is granted under section 362(a)(1) or on equitable grounds: the result is the same; *a stay is proper in such a situation*.

Piccinin, 788 F.2d at 999-1000 (emphasis added). The Fourth Circuit thus made clear that it would have granted the automatic stay under 11 U.S.C. § 362(a)(1) as to the litigation pending against the non-debtor guarantor in Metal Center. Id.; see also First Nat'l Bank v. Kanawha Trace Dev. Partners (In re Kanawha Trace Dev. Partners), 87 Bankr. 892, 896-97 (Bankr. E.D. Va. 1988) (following the Fourth Circuit's reasoning in Piccinin to hold that the stay under 11 U.S.C. § 362(a)(1) applied to a guarantor of the debtor).

The Fourth Circuit clarified and distinguished its decision in Piccinin approximately two years later in Credit Alliance Corp. v. Williams, 851 F.2d 119 (4th Cir. 1988). In Williams, the debtor defaulted on a note executed in favor of Credit Alliance which was guaranteed by Gary and Malcolm Williams. 851 F.2d at 120. Credit Alliance filed suit in the Southern District of New York against the debtor and the guarantors. All three defendants failed to respond to the summons and complaint. The debtor then filed for relief under Chapter 11 of the Bankruptcy Code in the Western District of Virginia. Just over one month later, the Southern District of New York entered a default judgment against the debtor and its guarantors. Id. One of the guarantors argued that the default judgment was void because it violated the automatic stay. Id. at 121. The Fourth Circuit reaffirmed

the "unusual circumstances" exception recognized in Piccinin, but in rejecting the guarantor's argument, it stated that there was "nothing 'unusual' about this guaranty agreement that would permit the guarantor, Williams, to invoke the statutory protection of § 362 or that would permit us to stay the enforcement of the New York judgment against him on equitable grounds." Id. The court explained that it was "unnecessary to stay proceedings or void the judgment against the non-bankrupt guarantor to protect Penn Hook [the debtor] or to prevent the dissipation of its assets, since neither Penn Hook nor its estate is jeopardized by the judgment against Williams." Id. at 122.

Piccinin and Williams demonstrate that while the "unusual circumstances" exception may exist in a guaranty relationship, the mere fact that a non-debtor is a guarantor of the debtor is insufficient by itself to justify invoking the exception. Rather, as indicated in Williams, there must be something unusual about the guaranty relationship that would warrant applying the automatic stay under 11 U.S.C. § 362(a)(1) to a non-debtor guarantor. This, of course, raises the question of what additional circumstances make a guaranty relationship so unusual that it falls within the exception to the general rule that the automatic stay under 11 U.S.C. § 362(a)(1) is limited to the debtor.

One such circumstance where courts have applied the stay to a non-debtor is when allowing litigation to continue against the non-debtor would threaten the ability of the debtor to fund a feasible reorganization plan. See In re Shearin Family Investments, LLC, 2009 Bankr. LEXIS 3105, at *4 (Bankr. Sept. 23, 2009); Kanawha, 87 Bankr. at 893-97. For example, in Kanawha, First National Bank of Louisville filed suit to enforce a guaranty agreement against a guarantor who was also a limited partner of the debtor. Kanawha, 87 Bankr. at 893. The court found that the guarantor represented the "only short term source of funding available to the Kanawha Trace project [the debtor's business operations]." Id. With this recognition, the court stated that the guarantor's

8

"involvement in the project is essential if the reorganization is to be successful," and it thus concluded that the stay applied to First National Bank's suit against the guarantor.[5] Id. at 896-97.

Concerns over the inability to fund a successful reorganization plan if the stay were not applied to the non-debtor were also present in Shearin, 2009 Bankr. LEXIS 3105, at *4. In Shearin, there were three lawsuits pending in state court against the debtor's principal. Id. at *2. Although the lawsuits resulted from the debtor's failure to deliver condominium units, and did not involve a guaranty agreement, the issue was whether the stay applied to the principal. Id. at *1. Among many other factual findings, the court found that the principal's participation in marketing and selling the units was critical and that "[w]ithout the successful marketing and selling of condominium units, it is unlikely that the debtor will have a revenue stream to maintain a feasible reorganization plan." Id. at *4. In staying the state court litigation, it is thus apparent that the court in Shearin was concerned that the debtor might have been unable to continue funding a reorganization plan if the litigation against the principal was allowed to proceed. Id.

Of course, there were additional circumstances existing in Shearin that caused the court to stay the litigation against the debtor's principal. Id. at *3-5. The principal was "deeply intertwined in the debtor's project," spending nearly 95% of his time managing the project. Id. at *3-4. The underlying bankruptcy case was "at a critical juncture" that required the principal's participation. Id. at *4. There was also the possibility that the reorganization plan would moot some of the

---

[5]The guarantor in Kanawha actually requested the bankruptcy court to issue a preliminary injunction against First National Bank. However, in deciding that the stay under 11 U.S.C. § 362(a)(1) applied, the court stated in a footnote that "[b]ecause a stay of the district court proceeding prevents enforcement of First National's guaranty agreement, the issue of whether a preliminary injunction that would prohibit the bank from proceeding with its litigation need not be addressed." Kanawha, 87 Bankr. at 897 n.3.

9

pending lawsuits. Id. Ultimately, the court summed up the basis for its decision by stating it was "clear . . . that the chance of a successful reorganization will be maximized by the ability of Shearin [the principal] to devote his unfettered efforts to that end." Id. at *4-5; see also In re N. Star Contracting Corp., 125 B.R. 368, 370-71 (S.D.N.Y. 1991) (finding that the stay applied to a lawsuit against the debtor's principal because the debtor's "reorganization efforts would be harmed" if the suit was allowed to proceed).

Subsequent to the decision in Shearin, this court has declined to apply the stay to non-debtors on two separate occasions, one of which involved a non-debtor guarantor. In re Robert F. Youngblood Const. Co., 2012 Bankr. LEXIS 1214 (Bankr. E.D.N.C. March 22, 2012); In re KVS Foodsystems, LLC, 2009 Bankr. LEXIS 1184 (Bankr. E.D.N.C. April 29, 2009). In both cases, the court found that there were no "unusual circumstances" present that would render the stay applicable to the non-debtor. In re Robert F. Youngblood Const., 2012 Bankr. LEXIS 1214, at *10; In re KVS Foodsystems, 2009 Bankr. LEXIS 1184, at *8. The court refused to apply the stay to the non-debtors noting that the proper remedy was for the non-debtors to file their own individual bankruptcy. In re Robert F. Youngblood Const., 2012 Bankr. LEXIS 1214, at *10; In re KVS Foodsystems, 2009 Bankr. LEXIS 1184, at *11.

In the instant case, because the intricate relationship between the debtors and the Arbitration Respondents falls within the "unusual circumstances" exception as articulated by the Fourth Circuit in Piccinin, the court concludes that the automatic stay under 11 U.S.C. § 362(a)(1) applies to the arbitration against the Arbitration Respondents. Mr. Herndon and Count Arco, two of the Arbitration Respondents, play an integral role in the day-to-day operations of the debtors. Thus,

while the arbitration is based on the Arbitration Respondents' status as guarantors, the prosecution of it will have significant effects on the debtors' ability to successfully reorganize.

Further, the issues presented in the arbitration are identical to those presented in the Adversary Proceeding. Accordingly, preparation for the prosecution of the Adversary Proceeding is identical to preparation for the defense of the arbitration, both of which rely heavily on the resources and workforce of the debtors. Such preparation would be required at a time when the Bankruptcy Cases are at a "critical juncture," with confirmation hearings scheduled to occur in March of 2013.

Finally, and most importantly, the debtors' reorganization has depended and will continue to depend upon financing from AAC Property Investment Fund, LLC ("PIF"), and AAC Retail Property Development and Acquisition Fund, LLC ("Retail Funding").[6] The financial stability and long term funding of PIF and Retail Funding is dependent upon Key Bank's underwriting assessment of Herndon and Count Arco. Actual litigation against Herndon and Count Arco will detrimentally affect that assessment. Thus, the arbitration significantly threatens the debtors' ability to maintain sufficient financing necessary to fund a feasible reorganization plan, and continued prosecution of it will place the debtors' chances at achieving a successful reorganization in serious doubt.

These circumstances also justify granting the debtors a preliminary injunction under 11 U.S.C. § 105 enjoining the arbitration. See McHale v. Alvarez (In re The 1031 Tax Grp., LLC), 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) ("To enjoin claims against non-debtors under § 105(a),

---

[6]See Interim Order Granting Authority To Obtain Post-Petition Financing And Providing Notice Of Further Hearing dated May 18, 2012.

a bankruptcy court must find that the claims threaten to thwart or frustrate the debtor's reorganization efforts . . . and that the injunction is important for effective reorganization.") (citations and quotations omitted); Lazarus Burman Assoc. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assoc.), 161 B.R. 891, 899-902 (Bankr. E.D.N.Y. 1993) (enjoining suit against principals of debtor when allowing suit to proceed would impair the ability of the principals to raise necessary funds for, and would substantially divert the principals' attention away from, the debtors' reorganization). For the reasons similar to those that warrant a determination that the stay applies to the arbitration, the court also concludes that the arbitration acts as a significant threat to thwart or frustrate the debtor's reorganization efforts and that the injunction is very important for an effective reorganization.

Based on the foregoing, the debtors' motion is **GRANTED** and the arbitration against the Arbitration Respondents is stayed pending a hearing on confirmation of the debtors' plan of reorganization.

**SO ORDERED.**

**END OF DOCUMENT**