

**SO ORDERED.**

**SIGNED this 12 day of February, 2013.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

**IN RE:**                                                    **CASE NO.**

**BRIER CREEK CORPORATE CENTER**              **12-01855-8-SWH**
**ASSOCIATES LIMITED, et al.,**

        **DEBTORS**

## ORDER DENYING BANK OF AMERICA'S EMERGENCY
## MOTION FOR STAY OF ORDER PENDING APPEAL

The matter before the court is Bank of America's emergency motion for the court to stay its

order entered on January 14, 2013 (the "Stay Order"). The Stay Order stayed arbitration initiated

by Bank of America against the debtors' guarantors (the "Guarantor Arbitration"). A hearing was

held in Raleigh, North Carolina, on January 30, 2013. The court entered an order on January 30,

2013, denying the bank's emergency motion. This order sets forth the reasons for such denial.[1]

### DISCUSSION

Rule 8005 of the Federal Rules of Bankruptcy Procedure enables a party appealing an order

of the bankruptcy judge to seek a stay of such order pending appeal. The motion must "ordinarily

_____

[1]The court herein incorporates by reference the findings and reasoning set forth in the Stay
Order. See In re Brier Creek Corp. Ctr. Assocs. Ltd. P'ship, 2013 Bankr. LEXIS 143 (Bankr.
E.D.N.C. Jan. 14, 2013).

be presented to the bankruptcy judge in the first instance." Fed. R. Bankr. P. 8005. The judge "may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Id.

For the court to issue a stay pending appeal the bank must demonstrate that: (1) it is likely to succeed on the merits of its appeal; (2) it is likely to suffer irreparable harm absent a stay; (3) other parties will not be substantially harmed by a stay; and (4) the public interest will be served by staying the bankruptcy court's order. In re Bannerman Holdings, LLC, 2011 U.S. Dist. LEXIS 7573, at *2 (E.D.N.C. Jan. 26, 2011). The following explains why the court is not convinced that Bank of America has satisfied the standard necessary for a stay of the Stay Order pending appeal.

## I.    Bank of America's likelihood of success on its appeal of the Stay Order

Bank of America contends that it has a substantial likelihood of prevailing on its appeal, generally stating that the court erred because: (1) it lacked jurisdiction and authority to hear and determine the request for relief; (2) the debtors should have been required to initiate an adversary proceeding to obtain the relief requested; (3) the Guarantor Arbitration did not fall within the "unusual circumstances" exception to which the stay under 11 U.S.C. § 362(a)(1) applies; and (4) the court failed to apply the correct legal standard necessary to grant an injunction pursuant to its powers under 11 U.S.C. § 105. For the reasons set forth below, the court finds that Bank of America is not likely to prevail on appeal.

**A.      Jurisdiction over the debtors' motion and authority to enter a final judgment**

In their motion, the debtors requested an order confirming that the automatic stay applies to the Guarantor Arbitration and granting an injunction pursuant to the court's powers under § 105. The court interpreted this as an initial request to determine whether the automatic stay applied to the Guarantor Arbitration by virtue of the "unusual circumstances" exception recognized by the Fourth Circuit in Piccinin, but if the stay did not apply, then the debtors were requesting that the court use its § 105 powers to enjoin the arbitration.  See A. H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986).

Bankruptcy courts have original but not exclusive jurisdiction over every civil proceeding "arising under" the Bankruptcy Code, "arising in" the Bankruptcy Code or "related to" a bankruptcy case.  28 U.S.C. § 1334(b); FPSDA II, LLC v. Larin (In re FPDSA I, LLC), 2012 Bankr. LEXIS 5928, at *15 (Bankr. E.D.N.Y. Dec. 26, 2012).  Proceedings "arising under" Title 11 consist of "any causes of action created by Title 11 . . . meaning any matter under which a claim is made under a provision of [T]itle 11[.]"  Kraken Inv. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC), 475 B.R. 9, 27 (2012) (citations and quotations omitted); see also FPSDA II, LLC, 2012 Bankr. LEXIS 5928, at *16 ("[A] civil proceeding is one 'arising under' the Bankruptcy Code if it 'invokes a substantive right created by the Bankruptcy Code[.]").  Proceedings "arising in" Title 11 "arise only in bankruptcy cases" and are "matters not based on any right expressly created by Title 11, but that would have no existence outside of the bankruptcy."  Kraken Inv. Ltd., 475 B.R. at 27; FPSDA II, LLC, 2012 Bankr. LEXIS 5928, at *16.

The court had "arising under"  jurisdiction over the debtors' motion in that it specifically requested an order confirming that the stay under § 362(a)(1) applies to the Guarantor Arbitration.

3

The automatic stay under § 362(a)(1) is exclusive to the Bankruptcy Code.  See FPSDA II, LLC, 2012 Bankr. LEXIS 5928, at *16 ("The automatic stay of 11 U.S.C. § 362(a) is found nowhere but in bankruptcy.  It is imposed directly by the Bankruptcy Code, which in turn provides the Debtor with the 'substantive right' to invoke its protections.").  Therefore, whether the automatic stay applies to the Guarantor Arbitration by virtue of the "unusual circumstances" exception falls squarely within the court's "arising under" jurisdiction.

The court also had "arising in" jurisdiction over the debtors' request for an order granting an injunction pursuant to § 105.  Even if § 105 cannot form the basis for "arising under" jurisdiction, a § 105 injunction arises only in bankruptcy cases in that such an injunction would have no existence outside of bankruptcy.  The debtors would not be entitled to a § 105 injunction but for the existence of their bankruptcy cases.  The Second Circuit described the court's jurisdiction over § 105 injunction in the following way:

> [I]n our view, if the bankruptcy court may ever use its equitable powers under section 105(a) to enjoin actions pursued in other courts as 'concerning the administration of the estate' under section 157(b)(2)(A), it may exercise that power where there is a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action.  We therefore conclude that the bankruptcy court had jurisdiction to issue the injunction.

Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 64 (2nd Cir. 1986); see also FPSDA II, LLC, 2012 Bankr. LEXIS 5928, at *17 ("[C]ommon sense indicates that, if the Court has subject matter jurisdiction over a proceeding to determine the applicability of the automatic stay, then it has jurisdiction over a related motion for preliminary injunctive relief.").[2]

---

[2]See also Picinnin, 788 F.2d at 1002-03 ("The court will have ample power [under Section 105] to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case."); Apollo Molded Prods., Inc., v. Kleinman (In re Apollo Molded Prods., Inc.), 83 B.R. 189, 191 (Bankr. D. Mass. 1988)

The court, therefore, had "arising under" and "arising in" jurisdiction pursuant to 28 U.S.C. § 1334(b) over the debtors' motion.  Additionally, and at a minimum, the bankruptcy court had "related to" jurisdiction over the Guarantor Arbitration.  The test for whether a civil proceeding is "related to" a bankruptcy case "is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*."  Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 836 (4th Cir. 2007).  "[A]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate."  Id.

Courts have often found "related to" jurisdiction over non-debtor litigation because the litigation hinders the reorganization process or in some other way affects the administration of the

---

(holding bankruptcy court had jurisdiction to issue injunction of state court litigation against debtor's principal, stating "[t]his power [under 11 U.S.C. § 105(a)] includes the authority to enjoin litigants from pursuing actions in other courts that threaten the integrity of the Debtor's estate") (citing Piccinin); Lahman Mfg. Co. v. First Nat'l Bank of Aberdeen (In re Lahman Mfg. Co.), 33 Bankr. 681, 683 (Bankr. D.S.D. 1983) ("The jurisdictional test is whether failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through a third party.").

bankruptcy estate.[3] Non-debtor litigation is also "related to" the bankruptcy case when the litigation itself impairs the court's jurisdiction over the bankruptcy proceedings.[4]

The Guarantor Arbitration directly affects the administration of the debtors' bankruptcy cases and undermines this court's jurisdiction over the proceedings within these cases in several ways. As the Stay Order provides, "continued prosecution of it [the Guarantor Arbitration] will place the debtors' chances at achieving a successful reorganization in serious doubt." Not only does the arbitration jeopardize the debtors' ability to obtain necessary funding for the plan, it will require additional time and resources of the debtors at a critical stage in the bankruptcy cases. By frustrating the debtors' chances at a successful reorganization, the very purpose for their bankruptcy, the Guarantor Arbitration directly affects the administration of the bankruptcy proceedings and impedes

---

[3]See Refinery Holding Co., L.P. v. TRMI Holdings, Inc. (In re El Paso Refinery, LP), 302 F.3d 343, 349 (5th Cir. 2002) ("A matter is 'related to' a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."); DeLorean Motor Co. v. Weitzman, 991 F.2d at 1242 (6th Cir. 1993) ("Section 105(a) contemplates injunctive relief in precisely those instances where the parties are pursuing actions in other courts that threaten the integrity of the bankrupt's estate."); Gander Partners, LLC v. Harris Bank, N.A. (In re Gander Partners, LLC), 432 B.R. 781, 785 (Bankr. N.D. Ill. 2010) ("The lawsuits against the Debtors' guarantors are related to these bankruptcy cases as their resolution could hinder this court's ability to help the reorganization process by diverting funds necessary for a reorganization."), aff'd, Harris Bank, N.A. v. Gander Partners, LLC, 442 B.R. 883 (N.D. Ill. 2011); In re Chateaugay Corp., 109 Bankr. 613, 621 (S.D.N.Y. 1990) ("Where an action taken outside the bankruptcy court threatens the reorganization, Section 105 permits the issuance of injunctive relief to effectuate the bankruptcy court's jurisdiction under 28 U.S.C. § 157 to administer the reorganization.").

[4]See In re L & S Industries, Inc., 989 F.2d 929, 932 (7th Cir. 1993) ("[A] bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over a case before it."); Harris Bank, N.A. v. Gander Partners, LLC, 442 B.R. at 887 (same); In re AS Management Services, Inc., 2007 Bankr. LEXIS 2477, 2007 WL 2100514, at *14 (Bankr. S.D. Fla. July 12, 2007) ("As Collier observes, [t]he basis purpose of the section [§ 105] is to enable the [bankruptcy] court to do whatever is necessary to aid its jurisdiction, i.e. anything arising in or relating to a bankruptcy case."); In re Chateaugay Corp., 109 Bankr. at 621 ("Section 105 permits the issuance of injunctive relief to effectuate the bankruptcy court's jurisdiction under 28 U.S.C. § 157 to administer the reorganization.").

on the court's ability to administer the estate, particularly with respect to the claims process and the pending Adversary Proceeding, as explained below.

The Guarantor Arbitration and the pending Adversary Proceeding overlap significantly.  In the Guarantor Arbitration, Bank of America must demonstrate, and the arbitrator must decide, that the debtors were in default on the loan documents.  See Arcady Farms Milling Co. v. Wallace, 242 N.C. 686, 689, 89 S.E.2d 413, 415 (1955) ("A guaranty of payment is an absolute promise to pay the debt at maturity, if not paid by the principal debtor."); Gillespie v. De Witt, 53 N.C. App. 252, 280 S.E.2d 736 (1981) ("A guarantor's liability arises at the time of the default of the principal debtor on the obligation or obligations which the guaranty covers.").  A major, if not decisive, issue in the Adversary Proceeding is whether a default on the loan documents occurred.  Further, as made clear in this court's Order Regarding Debtors' Limited Objections to Claims of Bank of America, N.A., dated January 18, 2013, many components of Bank of America's claims in the bankruptcy cases necessarily depend on whether the debtors were in default. Significantly, therefore, the outcome of the Adversary Proceeding will have a direct impact on Bank of America's claims against the debtors.  It could not be more clear that the Guarantor Arbitration, as to both its prosecution and its outcome, will likely deprive this court of its authority and flexibility to decide the issues in the Adversary Proceeding, the outcome of which directly affects the claims process.[5]

Finally, and alternatively, if Bank of America prevails in the Guarantor Arbitration, and proceeds to collect from the guarantors, any amount collected will reduce the amount of its claims

---

[5]Bank of America argues that the Guarantor Arbitration will have no preclusive effect on the Adversary Proceeding, citing to Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213 (1985).  The Court in Dean Witter specifically declined to decide what preclusive effect the arbitration proceedings in that case would have because the issue was not before the Court. Id. at 223.

against the debtors.  As Bank of America recognizes, and has argued, even if the guarantors were

then to try and recover from the debtors pursuant to 11 U.S.C. §§ 502(e) and 509, the debtors would

be able to contest the guarantors' claims on the same basis it is currently contesting Bank of

America's claims.  Thus, the Guarantor Arbitration may, if Bank of America is successful, result in

a decrease of the debtors' liabilities, regardless of whether the guarantors bring an action against the

debtors to recover any amounts paid.  The test for "related to" jurisdiction is easily satisfied.[6]

Because of this court's "arising under" jurisdiction over the § 362 request, and to the extent

that the debtors' request for § 105 relief falls under this court's "arising in" jurisdiction, it also had

authority to enter a final judgment because the proceeding before the court was a "core" proceeding.[7]

_____

[6]The decisions relied upon by Bank of America are distinguishable from the circumstances surrounding the Guarantor Arbitration and its likely effect on the debtors' bankruptcy cases.  See In re W.R. Grace & Co., 591 F.3d 164, 171 (3d Cir. 2009) (holding that "an inchoate claim of common law is not, in and of itself, enough to establish the bankruptcy court's subject matter jurisdiction" and that "in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must 'affect the bankruptcy [] without the intervention of yet another lawsuit.") (citing In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002); Quigley Co., Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.), 676 F.3d 45, 53 (2d Cir. 2012) (holding that third-party non-debtor claims must directly affect the res of the bankruptcy estate).  As explained, the Guarantor Arbitration will significantly and directly affect the bankruptcy proceeding and the estate, even without the intervention of a separate lawsuit filed by the guarantors, thus satisfying the standards set forth in the Third and Second Circuits.  See also Refinery Holding Co., L.P., 302 F.3d at 349 (stating that it had "related to" jurisdiction over third-party litigation when the litigation could trigger a chain of indemnification actions ending with the debtor); Mich. Empl. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1143 (6th Cir. 1991) ("[W]e have held that where the parties  are more intertwined than the parties in Pacor . . . the statute does not require a finding of definite liability of the estate as a condition precedent to holding an action related to a bankruptcy proceeding.") (citations omitted); In re Fairpoint Communications, Inc., 452 B.R. 21, 29 (S.D.N.Y. 2011) (disagreeing with Third Circuit, and stating that "our Court of Appeals [the Second Circuit] is likely to hold that such a contingent indemnification obligation 'directly affects' the res of the bankruptcy estate and threatens the finality for the debtor that the bankruptcy system seeks to provide.").

[7]For support of this conclusion, see Apollo Molded Prods., 83 B.R. at 191 ("[S]eeking an injunction to protect the reorganizational process . . . is a core proceeding as a matter "concerning the administration of the estate" within the meaning of 28 U.S.C. § 157(b)(2)(A)."); Manville Corp.

The proceeding is statutorily "core" pursuant to 11 U.S.C. § 157(b)(2)(A) and (O) for reasons already discussed. Additionally, "core" proceedings are "those that arise in a bankruptcy case or under Title 11." <u>Stern v. Marshall</u>, 131 S. Ct. 2594, 2605, 180 L. Ed. 2d 475 (2011); <u>see</u> <u>FPSDA II, LLC</u>, 2012 Bankr. LEXIS 5928, at *18 ("If a matter is not specifically listed in 28 U.S.C. § 157(b)(2), then it is still 'core' if the Court has 'arising under' or 'arising in' jurisdiction over it."). Not only is it statutorily "core," it is constitutionally "core" as well. <u>See</u> <u>TP, Inc. v. Bank of America, N.A. (In re TP, Inc.)</u>, 479 B.R. 373, 384 (2012) (providing that a matter is constitutionally core if the "action at issue stems from the bankruptcy itself).

## B.      The necessity for an additional adversary proceeding

As an initial matter, seeking a determination that the automatic stay under § 362(a)(1) applies to non-debtor litigation pursuant to the "unusual circumstances" exception does not require an adversary proceeding. <u>See</u> 10 Alan N. Resnick & Henry J. Sommer, <u>Collier on Bankruptcy</u> ¶ 7001.08 (16th ed. rev. 2012) ("[A] distinction should be made between those situations covered by an automatic injunction or stay, such as those covered by section 362(a) of the Code, and those in which a proceeding must be commenced to obtain an injunction."). Therefore, the debtors' motion to confirm that the automatic stay applies to the Guarantor Arbitration by virtue of the "unusual circumstances" exception was procedurally proper.

---

v. Equity Sec. Holders Comm, 801 F.2d at 63 ("An action brought to restrain interference resulting from proceedings in conflict with reorganization clearly may by its nature be core . . . since it will likely affect the administration of the estate."); <u>Gander Partners, LLC v. Harris Bank, N.A.</u>, 432 B.R. at 786 ("[P]roceedings involving requests to enjoin litigation pursuant to 11 U.S.C. § 105 are core proceedings over which bankruptcy judges have authority to enter final orders[.]" (citations omitted); <u>FPSDA II, LLC</u>, 2012 Bankr. LEXIS 5928, at *15-19.

9

A request for an injunction pursuant to the court's powers under § 105 must ordinarily be made by filing an adversary proceeding, but if an adversary proceeding has already commenced, the request may be made by motion; the commencement of an entirely new adversary proceeding is unnecessary. Id. ("Once an adversary proceeding has been commenced, there is nothing to preclude a party from proceeding by motion to obtain a preliminary injunction.").  Further, even where a party has failed to file an adversary proceeding, courts have on occasion addressed the merits and granted the relief requested if it is warranted.  Id.; see, e.g., In re Service Merchandise Co., Inc., 256 B.R. 755, 765-66 (Bankr. M.D. Tenn. 2000).

The debtors' request to issue an injunction pursuant to the court's powers under § 105 was procedurally proper because an adversary proceeding had already been commenced against Bank of America.  The Adversary Proceeding involves claims by the debtors against Bank of America regarding the loan transactions and counterclaims by Bank of America against the debtors to collect under the loan documents.  As explained, the Adversary Proceeding and the Guarantor Arbitration are interrelated and contain overlapping issues, particularly as to whether the debtors were in default. It is appropriate, therefore, for the debtors to seek an injunction pursuant to § 105 in the Adversary Proceeding.  Requiring an entirely new adversary proceeding would have been inefficient and unnecessary given the close relation between the Adversary Proceeding and the Guarantor Arbitration.  Rule 65 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7065 of the Federal Rules of Bankruptcy Procedure, expressly permits the relief sought by the debtors to be made by motion in the Adversary Proceeding.

While the motion was initially filed in the bankruptcy cases, during the hearing on the motion, counsel for the plaintiffs made an oral motion in the Adversary Proceeding for an injunction,

which was later supplemented in writing.  Even if the failure to initially file the motion in the

Adversary Proceeding was improper, interests of judicial economy and the lack of prejudice to Bank

of America warranted addressing the merits of the motion.  Bank of America was provided with

notice of the motion.  It had the very same opportunity to defend against the motion if it had been

filed in the Adversary Proceeding.  A hearing was conducted on the debtors' motion in which Bank

of America had the opportunity to, and did, cross-examine the debtors' witnesses.  Bank of America

was not prejudiced by what it perceives to be a procedural irregularity.

**C.    Application of the automatic stay under § 362(a)(1) to the Guarantor Arbitration by virtue of the "unusual circumstances" exception recognized in <u>Piccinin</u>**

Bank of America contends that the Stay Order contradicts the Fourth Circuit's decisions in

<u>Credit Alliance Corp. v. Williams</u>, 851 F.2d 119 (1988) and <u>Winters v. George Mason Bank</u>, 94 F.3d

130, 134 (4th Cir. 1996) because the "unusual circumstances" exception recognized in <u>Piccinin</u> for

the application of the stay does not exist to protect guarantors.  However, as set forth in the Stay

Order, this court does not read <u>Credit Alliance</u> or <u>Winters</u> as such an expansive departure from the

Fourth Circuit's analysis in <u>Piccinin</u>.  Rather, these decisions, while clarifying and distinguishing

<u>Piccinin</u>, established what can be viewed as a "guarantor-plus" standard.

In <u>Piccinin</u>, the Fourth Circuit recognized that the automatic stay under § 362(a)(1) may in

"unusual circumstances" apply to non-debtors.  788 F.2d at 999.  The court then articulated what

it thought would constitute such "unusual circumstances":

> This 'unusual situation,' . . . arises when there is such identity between the debtor
> and the third-party defendant that the debtor may be said to be the real party
> defendant and that a judgment against the third-party defendant will in effect be a
> judgment or finding against the debtor.  An illustration of such a situation would be
> a suit against a third-party who is entitled to absolute indemnity by the debtor on
> account of any judgment that might result against them in the case.  To refuse

> application of the statutory stay in that case would defeat the very purpose and intent of the statute.

Id.  In providing examples of what it considered to be "unusual circumstances," the court described the facts of three cases, all of which involved a creditor's action against the debtors' guarantors.  Id.[8]

Following its Piccinin decision, the Fourth Circuit in Credit Alliance reaffirmed the "unusual circumstances" exception but declined to hold that the exception applied to the guarantor litigation in that case.  851 F.2d at 121-122; see also Winters, 94 F.3d 130, 133-34 (discussing Credit Alliance and the "unusual circumstances" exception in the guarantor context).  However, in both Credit Alliance and Winters, as discussed below, there were no circumstances whatsoever suggesting that the particular actions against the non-debtors presented "unusual circumstances."  In Credit Alliance, a default judgment had already been entered against the guarantors before the debtor sought to enjoin garnishment proceedings against the guarantors.  851 F.2d at 120.  In Winters, the creditor had already converted the non-debtor's stocks, which served as collateral for the debtors' obligation to the creditor, prior to the non-debtor bringing an action in the bankruptcy court arguing that the conversion violated the stay.  94 F.3d at 133.  The Fourth Circuit in both cases explicitly recognized that the facts before it did not present "unusual circumstances."  Winters, 94 F.3d at 134 ("This case does not present such an unusual situation."); Credit Alliance, 851 F.2d at 121-122 (stating "[t]here is nothing 'unusual' about this guaranty agreement that would permit the guarantor . . . to invoke the statutory protection of § 362" and "neither Penn Hook [the debtor] nor its estate is jeopardized by the judgment against Williams [the guarantor]").

---

[8]Even if this was dicta, as Bank of America argues, it clearly manifests the Fourth Circuit's intent that the "unusual circumstances" exception apply to circumstances beyond those existing in Piccinin.  Further, this court before has applied the exception to facts unlike those of Piccinin.  See In re Shearin Family Investments, LLC, 2009 Bankr. LEXIS 3105 (Bankr. Sept. 23, 2009).

Both Credit Alliance and Winters recognize the validity of the "unusual circumstances" exception to § 362(a)(1), and these decisions do not abrogate the exception as to suits seeking to enforce guaranty agreements. Rather, what is clear from these decisions, as provided in the Stay Order, is that a suit against a debtor's guarantor does not in and of itself constitute "unusual circumstances," but if there are other circumstances present bringing the guarantor litigation within the scope of the exception, then such litigation will be stayed pursuant to § 362(a)(1).

While the circumstances existing in the instant case are not as dire as those presented in Piccinin, they are far from those that existed in Winters and Credit Alliance. The Guarantor Arbitration is not your typical garden-variety guarantor lawsuit, despite Bank of America's attempts to characterize it as such. In Winters and Credit Alliance there was no *pending* litigation against the non-debtors that could detrimentally affect the debtors' bankruptcy cases or undermine the bankruptcy court's jurisdiction. Unlike the default judgment that had *already* been entered against the guarantor in Credit Alliance or the conversion of the non-debtor's stocks that had *already* occurred in Winters, both of which had no affect on the debtors or their estates, there is a strong likelihood that the Guarantor Arbitration will have a significant impact on the debtors and their bankruptcy estates. The Guarantor Arbitration's potential to derail the debtors' reorganization prospects makes it vastly different from the circumstances presented in Winters and Credit Alliance, and more closely related to the situation in Piccinin. Indeed, in upholding the grant of injunctive relief in Piccinin, the very basis for the Fourth Circuit's decision was that "any effort at reorganization of the debtor will be frustrated, if not permanently thwarted" if the litigation was not enjoined. 788 F.2d at 1008.

13

Another significant difference between the Guarantor Arbitration and the circumstances in Winters and Credit Alliance is the existence of the Adversary Proceeding and the effect it will have on Bank of America's claims in the bankruptcy case. As provided in the Stay Order, the issues presented in the Guarantor Arbitration encompass those that will be argued and decided in the Adversary Proceeding, particularly those relating to whether the debtors actually were in default of the loan documents. While the Adversary Proceeding and the Guarantor Arbitration nominally involve different parties, both require the debtors' time, efforts and resources to prosecute and defend. Although a judgment against the guarantors will not automatically result in a judgment against the debtors, the debtors are the ones who will likely be defending the Guarantor Arbitration given the intensely contested issues over default. One could deem Bank of America's initiation of the Guarantor Arbitration as an attempt to do indirectly what it cannot do directly simply by circumventing the Adversary Proceeding and pursuing the debtors' guarantors when issues still exist over whether the debtors were in default, a precondition to recovery from the guarantors. See In re Otero Mills, Inc., 21 B.R. 777, 778 (Bankr. D.N.M. 1982) ("This power to enjoin assures that a creditor may not do indirectly that which he is forbidden to do directly.").[9] This without question circumvents the court's jurisdiction over the Adversary Proceeding, as well as the overall administration of the bankruptcy cases given that the outcome of the Adversary Proceeding will

---

[9]While the quoted language in Otero Mills was made in the context of an injunction pursuant to 11 U.S.C. § 105, the court believes it is equally applicable to the instant analysis as to whether the stay under 11 U.S.C. § 362(a)(1) applies pursuant to the "unusual circumstances" exception. By pursuing the Guarantor Arbitration, Bank of America is eluding the protections afforded to the debtors by the Bankruptcy Code and the automatic stay, specifically because the Adversary Proceeding will determine whether the debtors were in default and thus whether Bank of America is entitled to recover from the guarantors. This, the court believes, is precisely what the "unusual circumstances" exception encompasses.

affect Bank of America's claims against the debtors.  Finding that the stay under § 362(a)(1) does not apply to the arbitration would defeat the very purpose and intent underlying this statutory protection afforded to debtors.  See Piccinin, 788 F.2d at 999 ("To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.").

While the court in Credit Alliance recognized the policy behind enforcing guaranty agreements, there are competing policy concerns implicated with the Guarantor Arbitration that were non-existent in Credit Alliance.  First, the arbitration's potential to derail the reorganization efforts of the debtors defeats the very purpose for filing bankruptcy and completely undermines the protections afforded by the Bankruptcy Code.  Second, the arbitration impedes on this court's jurisdiction and flexibility to administer the claims process and to preside over the Adversary Proceeding.  Third, and finally, given that the exact same issues will be argued in the Adversary Proceeding and the Guarantor Arbitration, and that the outcome of both will affect the amount of Bank of America's claims in the bankruptcy cases, interests of judicial economy and centralized adjudication support an injunction of the arbitration.  See In re Ionosphere Clubs, 922 F.2d 984, 989 (2nd Cir. 1990) ("The Bankruptcy Code provide[s] for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court, and [this policy] is effectuated by Sections 362 and 105 of the Code.") (citations omitted).  These concerns were not present in either Winters or Credit Alliance.  They are, however, very much at stake in the instant case, and they override Bank of America's interest in enforcing its guaranty agreement against the debtors' guarantors, which the Stay Order only temporarily enjoins.

Bank of America also argues that two cases cited by the court are distinguishable from the facts of the instant case and therefore should not have been used as support for the Stay Order.  See

15

Lazarus Burman Associates, L.B. v. National Westminster Bank USA (In re Lazarus Burman Associates, L.B.), 161 B.R. 891 (Bankr. E.D.N.Y. 1993); First Nat'l Bank v. Kanawha Trace Dev. Partners (In re Kanawha Trace Dev. Partners), 87 Bankr. 892, 896-97 (Bankr. E.D. Va. 1988). Bank of America notes that in Lazarus and Kanawha, the non-debtors were contributing their own capital to the debtors' reorganization efforts, whereas here the guarantors are not. The critical fact, however, as the court sees it is that the non-debtor litigation threatens the ability of the debtors to obtain necessary funding for the reorganization plan, regardless of where or from whom the funding is coming. Just like in Lazarus and in Kanawha, the Guarantor Arbitration will likely impair the debtors' ability to fund their reorganization plan. See, e.g., Gander Partners, LLC v. Harris Bank, N.A., 432 B.R. at 788 (recognizing that the debtors' "principals' credit standings could be adversely affected endangering the [d]ebtors by decreasing their ability to guarantee the [d]ebtors' efforts to refinance" if litigation against the principals were not stayed). Based on the foregoing, the court finds that Bank of America is unlikely to succeed on the merits of its appeal of the court's holding that the stay applies to the Guarantor Arbitration by virtue of the "unusual circumstances" exception.[10]

_____

[10]Bank of America contends that with respect to the "unusual circumstances" exception, the debtors were required to demonstrate "unusual circumstances" as well as satisfy the standard for issuance of a preliminary injunction. The Ninth Circuit has interpreted the exception in a way that supports Bank of America's position. See Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations), 502 F.3d 1086, 1096 (9th Cir. 2007) (holding that the "unusual circumstances" exception was not a separate basis for staying non-debtor litigation from the traditional preliminary injunction standard). Contrary to the Ninth Circuit's interpretation in Excel Innovations, however, the "unusual circumstances" exception as recognized in the Fourth Circuit is a separate and distinct basis for staying non-debtor litigation than the basis for granting an injunction under § 105. See Piccinin, 788 F.2d at 999-1004 (discussing the four separate grounds for staying non-debtor litigation); Kreisler v. Goldberg (In re Kreisler), 478 F.3d 209 (4th Cir. 2007) (distinguishing between the "unusual circumstances" exception and an injunction under the court's § 105 powers). Determining that the non-debtor litigation falls within the "unusual circumstances" exception is

**D.      The court's powers under § 105 to enjoin the Guarantor Arbitration**

Bank of America argues that the court erroneously relied on § 362 for authority to enter a stay instead of applying the four-pronged test for preliminary injunctions.  The assertion that the court merely relied on § 362 to stay the Guarantor Arbitration is incorrect.  In the Stay Order, the court, after deciding that the circumstances fell within the "unusual circumstances" exception to which § 362(a)(1) applied, stated that these same circumstances *also* justify granting the debtors an injunction pursuant to § 105.

The "unusual circumstances" exception to § 362(a)(1), and an injunction pursuant to the court's powers under § 105, are two separate and distinct grounds on which the court can stay non-debtor litigation.  See Piccinin, 788 F.2d at 1003 ("There are thus four grounds [11 U.S.C. § 362(a)(1), 11 U.S.C. § 362(a)(3), 11 U.S.C. § 105, and the court's general equity powers] on which the bankruptcy court may enjoin suits against the bankrupt or its assets and property."); Kreisler, 478 F.3d 209 (distinguishing between the "unusual circumstances" exception and an injunction under the court's 11 U.S.C. § 105 powers); Kanawha, 87 Bankr. at 897 n.3.  While the former does not require the same analysis as the latter, one set of circumstances may implicate and warrant relief on both grounds.  See Piccinin, 788 F.2d at 999-1004 (discussing the different circumstances that warrant relief under the "unusual circumstances" exception and an injunction

ultimately finding that the debtor is the real-party defendant and that, therefore, the litigation falls within the scope of the § 362(a)(1) automatic stay.  The litigation is thus automatically stayed pursuant to § 362(a)(1), and further analysis of whether the party has satisfied the standard for a preliminary injunction is unnecessary.  See Kanawha, 87 Bankr. at 897 n.3 ("Because a stay of the district court proceeding prevents enforcement of First National's guaranty agreement, the issue of whether a preliminary injunction that would prohibit the bank from proceeding with its litigation need not be addressed.").  Even if the "unusual circumstances" exception does require additional satisfaction of the standard for a preliminary injunction, as stated in the Stay Order and explained in more detail herein, that standard was satisfied.

17

pursuant to § 105); Kreisler, 478 F.3d 209 (stating that while the "unusual circumstances" exception did not apply, the debtors could have sought injunctive relief under § 105).

The court concluded in the Stay Order that the circumstances of the Guarantor Arbitration, as it relates to the debtors' bankruptcy proceedings, warranted relief on two separate grounds—that the automatic stay under § 362(a)(1) applied by virtue of the "unusual circumstances" exception and, alternatively, an injunction pursuant to the court's powers under § 105. Accordingly, even if a party or a higher court were to disagree with this court's conclusion that the "unusual circumstances" exception applied, the Guarantor Arbitration should nevertheless be enjoined pursuant to § 105.

Bank of America argues, however, that the court in granting an injunction under § 105 erred because it failed to apply the traditional four-pronged test for a preliminary injunction pursuant to Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008). In Winter, the Court articulated the standard for a preliminary injunction in a non-bankruptcy context. Id.; see also Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345-47 (4th Cir. 2009) (discussing the differences between the standard for a preliminary injunction pronounced in Winter and the Fourth Circuit's prior Blackwelder standard), vacated on other grounds, Real Truth About Obama, Inc. v. FEC, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010). It is unclear whether the Winter standard for a preliminary injunction applies to a § 105 injunction in the Fourth Circuit, but even if the debtors were required to satisfy that traditional and more stringent standard, they have.

While courts often use the traditional preliminary injunction standard in analyzing a request to enjoin non-debtor litigation under § 105, that standard is modified and adapted to the bankruptcy

context.[11]  The Fourth Circuit, however, has not clearly held what the precise standard should be for

granting an injunction under § 105 or to what extent the traditional standard for a preliminary

injunction should be adapted to the bankruptcy context.[12]

However, in discussing what circumstances warrant an injunction under § 105, the Fourth

Circuit has made very clear that the critical, if not decisive, issue over whether injunctive relief

should be granted is whether and to what extent the non-debtor litigation interferes with the debtors'

reorganization efforts.  See Piccinin, 788 F.2d at 1003-09; Kreisler, 478 F.3d at 215.  In Piccinin,

the court repeatedly articulated that an injunction is warranted when the non-debtor litigation may

interfere with a debtor's reorganization efforts or affect the bankruptcy estate.  788 F.2d at 1003

(stating that bankruptcy courts have "ample power [under § 105] to enjoin actions excepted from

the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in

---

[11]See Fisher v. Apostolou, 155 F.3d 876, 882 (7th Cir. 1998) (holding that the "a bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it" and "the court does not need to demonstrate an inadequate remedy at law or irreparable harm"); Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp.), 462 B.R. 615, 629 (Bankr. S.D. Miss. 2011) (stating that the injunction standard is adapted to the bankruptcy context and that "some courts reformulate, relax or even eliminate some of the traditional elements") (quotations omitted); Buke, LLC v. Eastburg (In re Eastburg), 440 B.R. 864, 871-72 (Bankr. D.N.M. 2010) (collecting cases where court's have modified the injunction standard for the bankruptcy context); LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp. Reomar, Inc.), 93 B.R. 26, 29 (S.D.N.Y. 1988) ("The usual grounds for injunctive relief such as irreparable injury need not be shown in a proceeding for an injunction under section 105(a)."); 2 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 105.03[2] (16th ed. rev. 2012) ("Many courts reformulate the generic preliminary injunction standard to fit the particular needs of bankruptcy generally and the language of section 105 specifically.  Sometimes, these opinions focus exclusively on the need for an injunction to achieve reorganization or some other bankruptcy goal[.]").

[12]The Fourth Circuit arguably embraced the traditional standard for preliminary injunctive relief in Piccinin.  However, although the Fourth Circuit acknowledged that the district court applied the traditional test for a preliminary injunction, the court ultimately rested its holding on the fact that if the non-debtor litigation were allowed to continue "any effort at reorganization of the debtor" would be "frustrated, if not permanently thwarted."  Piccinin, 788 F.2d at 1008.  It then stated that the record was "more than adequate to support the district court's grant of injunctive relief."  Id.

a reorganization case"); Id. (acknowledging that an injunction may be granted only if the court finds that a "failure to enjoin would effect [sic] the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through the third party") (quoting Otero Mills, Inc., 25 Bankr. 1018, 1020 (Bankr. D.N.M. 1982)); Piccinin, 788 F.2d at 1003 ("[T]he Bankruptcy Court may use its injunctive authority to protect the integrity of a bankrupt's estate . . . and may issue or extend stays to enjoin a variety of proceedings . . . which will have an adverse impact on the Debtor's ability to formulate a Chapter 11 plan.") (quoting In re Johns-Manville Corp., 40 Bankr. 219, 226 (S.D.N.Y. 1984)).

In Kreisler, a relatively recent decision by the Fourth Circuit, the court recognized the availability of a § 105 injunction to protect the debtors' ability to successfully reorganize.  In that case, the debtors' wholly-owned subsidiary was being sued on an ejectment action in state court. Kreisler, 478 F.3d at 211.  The debtors argued that the stay applied by virtue of §§ 362(a)(1) and (a)(3). Id. at 213.  The court held that the stay did not apply under § 362, but wrote the following regarding what remedies the debtors could have pursued:

> We note that although the automatic stay under 11 U.S.C.A. § 362(a) is inapplicable to the ejectment action, Kreisler [the debtor] could have sought injunctive relief if he believed that the ejectment action would deprive them [the debtors] of funds needed for their reorganization or put detrimental pressure on their reorganization effort, as 11 U.S.C.A. § 105(a) gives the bankruptcy court jurisdiction to 'issue any order, process, or judgment that is necessary to carry out the provisions of this title.' 11 U.S.C.A. § 105(a) (West 2004 & Supp. 2006).  This provision 'empowers the bankruptcy court to enjoin parties other than the bankrupt from commencing or continuing litigation.'    Piccinin, 788 F.2d at 1002 (internal quotation marks omitted).  In addition, 'the bankruptcy court under its comprehensive jurisdiction as conferred by *section* 1334, *28 U.S.C.*, has the inherent power of courts under their general equity powers and in the efficient management of the[ir] dockets . . . to grant a stay.' Id. at 1003 (internal quotation marks omitted).  Kreisler chose not to pursue these avenues, however, so the propriety of injunctive relief apart from the automatic stay is not at issue in this case.

Id. at 215.

The decision in Kreisler is significant for two reasons. First, while the court did not specify what standard for relief applied to a § 105 injunction, it did articulate and reemphasize what the court in Piccinin considered to be the critical finding for such an injunction, i.e., that the non-debtor litigation will deprive the debtors of funds needed for their reorganization or put detrimental pressure on their reorganization efforts. Second, the decision clarifies that the Fourth Circuit does not limit injunctive relief under § 105 to Piccinin-like circumstances where the debtor faces mass tort litigation. Rather, where the facts are sufficient to demonstrate that the non-debtor litigation adversely impacts the debtors reorganization efforts, injunctive relief is warranted. This applies even if, as in the instant case, the non-debtor litigation involves a creditor seeking to enforce its guaranty agreement against the debtors' guarantors.

Accordingly, the precise circumstances that the Fourth Circuit has held warrants an injunction of non-debtor litigation are present in the instant case, as recognized in the Stay Order. Although this may be sufficient by itself to warrant an injunction under § 105 in the Fourth Circuit, these circumstances also satisfy the four-pronged test for the traditional preliminary injunction.

The findings made in the Stay Order, which focused on the detrimental impact the Guarantor Arbitration would have on the debtors' ability to reorganize, were sufficient to establish both a finding of irreparable injury and a likelihood of success on the merits. With respect to a likelihood of success on the merits, many courts modify this requirement in the bankruptcy context and merely require that the debtor have a reasonable likelihood of reorganization. See, e.g. In re Eagle-Picher Industries, Inc., 963 F.2d 855, 860 (6th Cir. 1992). However, it is worth noting that the Fourth Circuit in Piccinin acknowledged that if a court found that the "failure to enjoin would affect the

bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through that third-party [the non-debtor]," that would justify a finding *of both irreparable injury and a likelihood of prevailing on the merits*. <u>Piccinin</u>, 788 F.2d at 1004 (<u>citing</u> <u>Matter of Johns-Manville Corp.</u>, 26 Bankr. 405 (S.D.N.Y. 1983)).  Based on the recognition made in <u>Piccinin</u>, therefore, the findings made in the Stay Order were sufficient to satisfy the first and second prongs of the traditional preliminary injunction standard.

While the court did not discuss the debtors' chances of obtaining a successful reorganization, such a finding was encompassed by, and implicit in, the court's focus on protecting the debtors' reorganization efforts.  <u>See</u> <u>Eagle-Picher</u>, 963 F.2d at 860 ("In view of the bankruptcy court's protection of Eagle-Picher's [the debtor] reorganization efforts, it is implicit in its decision that it believed Eagle-Picher had some realistic possibility of successfully reorganizing under Chapter 11."); <u>but</u> <u>see</u> <u>Excel Innovations</u>, 502 F.3d at 1097 (stating that it is not a high burden to show reasonable likelihood of success in reorganization, but a bankruptcy court must consider the issue before granting an injunction).  The Sixth Circuit in <u>Eagle-Picher</u> acknowledged such an implicit finding, stating that the debtor's bankruptcy petition had been before the court "for over a month" and the court was "thoroughly familiar" with the reorganization plan.  <u>Id.</u>  Similar to the bankruptcy case in <u>Eagle-Picher</u>, the debtors' bankruptcy cases have been before the court since March 9, 2012, and it would be an understatement to say that there have been a copious number of motions and matters decided by the court within these cases.  The court is thus very familiar with the debtors' efforts to reorganize.  The findings made in the Stay Order evidencing the court's intent to protect these efforts imply its determination that the debtors, through the course of these bankruptcy proceedings, have shown a likelihood of achieving a successful reorganization.

The same is true for the remaining prongs of the preliminary injunction standard, i.e., whether the balance of harms and the public interest weighed in favor of granting the injunction. While the court did not explicitly address these prongs, such considerations were encompassed by the recognition that the Guarantor Arbitration would significantly interfere with the debtors' chances at a successful reorganization.    These findings clearly recognize that the arbitration would undermine the very purpose for filing bankruptcy and the protections afforded by the Bankruptcy Code.    See Fisher v. Apostolou, 155 F.3d 876, 882 (7th Cir. 1998) (acknowledging that the bankruptcy court did not discuss whether the injunction would harm the public interest, but stating "given that both the terms and the underlying purpose of the federal bankruptcy code are geared, at least in part, to protect the public interest, we have no trouble concluding that the bankruptcy court was required to consider it when weighing the merits" of the request for an injunction); Gander Partners, LLC v. Harris Bank, N.A., 442 B.R. at 887-88 (explaining why the interests of obtaining a successful reorganization justify a temporary stay of the guarantor litigation, and stating that "the public interest is best served if the reorganization is allowed to run its course with the assistance of the Guarantors, which could lead to the most effective resolution of the Bankruptcy Proceeding").

The direct adverse impact on the debtors' ability to reorganize was not the only basis for the Stay Order, however.    Many courts have also stayed non-debtor litigation when such litigation would impair the court's jurisdiction over the bankruptcy case or an adversary proceeding pending before the court.[13]    As previously explained in detail, the Guarantor Arbitration will directly

---

[13]See Continental Illinois National Bank v. Chicago, 294 U.S. 648, 675, 55 S. Ct. 595, 79 L. Ed. 1110 (1935) ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is inherent in a court of bankruptcy, as it is in a duly established court of equity."); Fisher v. Apostolou, 155 F.3d 876, 882 (7th Cir. 1998) (holding that it was unecessary for the bankruptcy court to find that the traditional elements required for a preliminary injunction

undercut this court's jurisdiction over the Adversary Proceeding and the general administration of the debtors' bankruptcy cases. This is another circumstance, separate from the fact that the arbitration will have a detrimental impact on the reorganization process, that warrants injunctive relief.

In sum, there are two reasons reflected in the Stay Order why relief under § 105 was warranted in the instant case, even if the "unusual circumstances" exception to § 362(a)(1) did not apply: first, the Guarantor Arbitration significantly impacts the debtors' reorganization efforts, mainly by hindering if not demolishing the debtors' ability to fund the plan and requiring the debtors' time, efforts and resources at a critical stage of the bankruptcy case; and second, the Guarantor Arbitration would directly undermine this court's jurisdiction over the pending Adversary Proceeding and administration of the bankruptcy cases. Each of these reasons standing alone is sufficient to grant injunctive relief under § 105.

---

were satisfied because "a bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it"); Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp.), 462 B.R. 615, 629 (Bankr. S.D. Miss. 2011) (stating that "several courts have held that once a bankruptcy court is satisfied that certain proceedings would defeat or impair its jurisdiction, a bankruptcy court may issue an injunction under 11 U.S.C. § 105(a) without much, if any, further analysis"); In re AS Management Services, Inc., 2007 Bankr. LEXIS 2477, at *13-18 (stating that the "adversary proceeding and the new state court action are virtually identical," and enjoining the state court action because pursuit of it would "seriously impair" the court's "flexibility and authority to resolve the issues before it, and any state court judgment or even the active prosecution of such an action, would directly interfere with the Court's ability to dispose of the case before it"); LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp. Reomar, Inc.), 93 B.R. 26, 29 (S.D.N.Y. 1988) ("[A] bankruptcy court may enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.").

**II.      The remaining requirements for issuance of a stay pursuant to Bankruptcy Rule 8005**

Bank of America is also unlikely to satisfy the other requirements that are necessary to issue a stay of the order.  Bank of America contends that it will be irreparably harmed if the order is not stayed because it is being denied (1) its procedural rights, (2) its right to enforce the guaranty agreement, and (3) its right to prosecute the Guarantor Arbitration while the debtors are free to prosecute the Adversary Proceeding.

As explained above, Bank of America was not denied its procedural rights when the court heard the debtors' motion in the bankruptcy cases.  Any procedural deficiency did not prejudice the bank because it was afforded every opportunity to defend against the motion as it would have otherwise had.  Further, while Bank of America certainly has an interest in enforcing the guaranty agreement it bargained for, this interest must be weighed against the detrimental impact that enforcement will likely have on the debtors' bankruptcy cases and this court's jurisdiction over administration of the estates.

It is unclear to the court why allowing the Adversary Proceeding to proceed while staying the Guarantor Arbitration is patently unfair to Bank of America, as the bank argues.  The debtors only sought a stay of the Guarantor Arbitration through the confirmation hearing—a delay of about three months.  Confirmation of the plan may resolve all guarantor issues; the plan may not be confirmed; but, in any event, unless otherwise agreed by the parties or ordered by the court, the Guarantor Arbitration may proceed after the confirmation hearing.  This relatively short delay is not unfair to Bank of America and must be balanced against the almost certain detrimental effect allowing the arbitration to proceed would have on the reorganization prospects and administration of the estate.

The bank's arguments that the balance of the equities and the public interest weigh in favor of staying the Stay Order pending appeal focus on the policy behind enforcing guaranty agreements. As already explained, such interests give way in this particular instance to the interests of protecting the debtors' reorganization efforts as well as this court's jurisdiction. Based on the foregoing, the court is not persuaded that Bank of America has satisfied the requirements for a stay pending appeal.

**SO ORDERED**.

**END OF DOCUMENT**
