

**SO ORDERED.**

**SIGNED this 29 day of May,2013.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **BRIER CREEK CORPORATE CENTER ASSOCIATES, LIMITED PARTNERSHIP,** *et. al.*, | **12-01855-8-SWH** |
| **DEBTORS** | |

**ORDER REGARDING APPLICATION FOR INTERIM COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES**

The matter before the court is the application for an order authorizing and approving the

payment of interim compensation and reimbursement of expenses filed by Northern Blue, LLP

("Counsel"), to which the Bankruptcy Administrator has objected. A hearing was held in Raleigh,

North Carolina on April 23, 2013. On May 7, 2013, the court granted Counsel's application. The

reasons for the court's decision are set out in this order.

The debtors, except for Cary Creek Limited Partnership, filed for relief under chapter 11 of

the Bankruptcy Code on March 9, 2012. Cary Creek Limited Partnership filed for chapter 11 relief

on January 3, 2013. The cases were consolidated for joint administration by orders entered on

March 23, 2012, and January 10, 2013. The court authorized employment of Counsel by orders

entered on April 17, 2012, and February 20, 2013.

Counsel has thus far been awarded a total of $298,394.81 in fees and expenses. The instant application is Counsel's sixth application for fees and expenses and seeks approval of an additional $75,764.18. Prior applications filed by Counsel were based upon hourly rates of $450 for Mr. John A. Northern and $350 for Ms. Vicki L. Parrott. In the instant application, the hourly rate for Mr. Northern was raised to $480 and the rate for Ms. Parrott to $380. The increase in hourly rates results in a net increase in legal fees, over those calculated using the original hourly rates, in the amount of $5,424.

The Bankruptcy Administrator argues that Counsel's hourly rates are excessive and that Counsel should not be permitted to increase rates by $30 per hour during the pendency of the bankruptcy cases. The Bankruptcy Administrator requests that, if the court approves Counsel's application, it provide her and the bar with guidelines setting forth the particular circumstances that justify the hourly rates charged in this case and in others, as well as a protocol to follow with respect to the increase of such rates during the course of the cases.

Section 331 of the Bankruptcy Code authorizes the allowance of interim compensation, but the reasonableness of such compensation is governed by the standards set out in Section 330. 11 U.S.C. § 331.[1] The Fourth Circuit has held that the proper method for determining a reasonable attorney's fee under Section 330 is the methodology used in awarding fees under federal fee-shifting statutes. Harman v. Robertson, 772 F.2d 1150, 1151 (4th Cir. 1985) (holding that the factors used in determining the reasonableness of a fee under federal fee-shifting statutes "are properly employed in the determination of a reasonable attorney's fee under 11 U.S.C. § 330[.]").

---

[1]All section references, unless otherwise indicated, are to the Bankruptcy Code.

This method begins by establishing the lodestar figure. Perdue v. Kenny A.,130 S. Ct. 1662 (2010) ("[T]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence."); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar figure is a product of "the number of hours reasonably expended . . . multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. The figure arrived at using this calculation is presumed to be a reasonable fee. See Perdue,130 S. Ct. at 1667 (stating that the presumption is a "strong" one) (quoting City of Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641 (1992)).

The Bankruptcy Administrator's objection is limited to Counsel's hourly rates; she does not contest the reasonableness of the hours expended. To assess the reasonableness of such rates, the court must determine whether they reflect the "prevailing market rate." Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541 (1984); Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994). The "prevailing market rate" is the rate that prevails "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum, 465 U.S. at 896 n. 11. The relevant community is "ordinarily . . . the community in which the court making the determination sits." In re EBW Laser, Inc., 2012 Bankr. LEXIS 3767, at *36 (Bankr. M.D.N.C. Aug. 14, 2012) (citing Caperton, 31 F.3d at 175).

Determining the "prevailing market rate" is a "fact intensive" inquiry. Caperton, 31 F.3d at 175. As the Fourth Circuit has explained, this determination is "best guided by what attorneys earn from paying clients for similar services in similar circumstances." Id. (citing Blum, 465 U.S. at 895 n.11). "While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." Caperton, 31 F.3d at 175 (citing Gusman v.

Unisys Corp., 986 F.2d 1146 (7th Cir. 1993) (providing that an attorney's actual billing rate provides a "starting point" for purposes of establishing a prevailing market rate)).

The Supreme Court of the United States has provided examples of factors that may appropriately be considered when determining a reasonable hourly rate.  See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S. Ct. 3088 (1986). Specifically, the "special skill and experience of counsel," the "quality of representation," and an attorney's "brilliant insights and critical maneuvers" are factors that ordinarily will be reflected in the reasonableness of hourly rates.  See Blum, 465 U.S. at 898; Perdue, 130 S. Ct. at 1674 n. 5.

The factors established by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, (5th Cir. 1974), also affect the analysis.  The Johnson factors are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to properly perform the legal service;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

See Daly v. Hill, 790 F.2d 1071, 1077-78 (4th Cir. 1986) (holding that the Johnson factors apply in determining the initial lodestar calculation); Hensley v. Eckerhart, 461 U.S. 424, 434 n. 9 (1983) (stating that the Johnson factors "are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate"); Delaware Valley I, 478 U.S. at 565 (same); see also Perdue, 130 S. Ct. at 1673 ("[W]e have noted that 'the lodestar figure includes most, if not all,

of the relevant factors constituting a 'reasonable' attorney's fee[.]") (quoting <u>Delaware Valley I</u>, 478 U.S. at 566).

With the Bankruptcy Reform Act of 1994 ("1994 Reform Act") and the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Congress amended Section 330 of the Code by developing a non-exhaustive list of factors that a bankruptcy court must consider in determining the reasonableness of compensation.  Section 330 now provides, in pertinent part, that "[i]n determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or take addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(F).

Many courts within the Fourth Circuit have construed the creation of this list as supplementing the Section 330 test for reasonableness that had previously been developed by courts, and thus was already in use.[2]  Accordingly, in addition to the factors referenced by the Supreme

---

[2]<u>See, e.g.</u>, <u>In re Pineloch Enterprises, Inc.</u>, 192 B.R. 675, 678 (Bankr. E.D.N.C. 1996) (acknowledging the list of factors enumerated under Section 330 but applying <u>Johnson</u> factors to determine reasonableness of flat fee in a chapter 11 case); <u>In re Lexington Hearth Lamp & Leisure, LLC</u>, 402 B.R. 135, 140-41 (Bankr. M.D.N.C. 2009) ("Within the boundaries of Section 330, courts usually use the lodestar standard as a means for determining the reasonableness of compensation[.]"); <u>In re Ameritex Yarn, LLC</u>, 378 B.R. 107, 114-15 (Bankr. M.D.N.C. 2007)

Court and Fourth Circuit, any other factors enumerated within Section 330(a)(3) of the Code that affect the reasonableness of hourly rates must also be considered.

Applying this legal framework to Counsel's application for compensation, the court concludes that the hourly rates are reasonable based on Counsel's representation in these bankruptcy cases. Based on information provided by the Bankruptcy Administrator, Mr. Northern's hourly rates appear to be the highest for debtors' attorneys practicing within the Eastern District of North Carolina.[3] It is not the practice of any court to publicly assess or provide commentary on the legal skills of attorneys appearing before it, except to the extent that the level of representation provided by counsel is specifically before the court on a legal issue requiring analysis. In this case, then, the court takes note of the fact that Mr. Northern has, in his many years of practice, demonstrated superior competency in the field of bankruptcy, and also has, more generally, displayed exemplary skills in the practice of law, both inside and outside of the courtroom. The court is aware of only a handful of bankruptcy practitioners within this district and even in this state that possess the level of skill, experience and legal acumen that Mr. Northern provides to his clients. If the court could

_____

(collecting cases post-BAPCPA that continue to rely on Harman, and stating that while the non-exhaustive list may have added criteria for the court to review in determining what constitutes a reasonable fee, the twelve factors articulated in Johnson still apply); In re Clark, 2012 Bankr. LEXIS 4842, at *5-16 (Bankr. W.D. Va. Mar. 8, 2012) (applying Johnson factors, yet stating that courts are not required to but may use the lodestar method in determining reasonableness of compensation under Section 330); In re Outdoor RV & Marine, LLC, 2011 Bankr. LEXIS 1698, at *11 (Bankr. D.S.C. May 10, 2011) ("In addition to the factors set forth by the Code, the Fourth Circuit utilizes the lodestar method to evaluate the reasonableness of attorney's fees."); In re Parkins, 2011 Bankr. LEXIS 1138, at *12 (Bankr. E.D. Va. Mar. 29, 2011) (stating that Subsections (A) and (B) of Section 330(a)(3) "are, essentially, the lodestar factors"); In re Marshall, 2010 Bankr. LEXIS 3558, at *118 (Bankr. E.D. Va. Oct. 11, 2010) ("Congress basically adopted the [Johnson] factors in . . . 11 U.S.C. § 330(a)(3) and (4).").

[3]The Bankruptcy Administrator supplied a compilation of hourly rates charged by different attorneys representing chapter 11 reorganization debtors in the Eastern District of North Carolina.

conceive of an attorney to set the benchmark for the topmost hourly rates in this district, it would be a practitioner like Mr. Northern.

While Ms. Parrott's rates are not as high as Mr. Northern's, they appear to be greater than most rates charged by other chapter 11 debtors' counsel in this district. Her level of experience and attendant skill do not rise to the level of Mr. Northern's, a fact accounted for by the lower hourly rate she requests; however, as the Bankruptcy Administrator acknowledges, she is an excellent bankruptcy attorney. She has practiced bankruptcy for many years and within such time has obtained significant experience with relatively complex reorganizations. As explained further below, given the nature and complexity of these particular bankruptcy cases, as well as the level of commitment and expertise required by Counsel in representing these debtors, the rate charged by Ms. Parrott for her representation *in these cases* is reasonable.

Although higher than the rates of other chapter 11 attorneys in this district, the hourly rate charged by Counsel in these bankruptcy cases is consistent with the rates they have charged to clients in other cases. See Caperton, 31 F.3d at 175 (stating that rates actually charged and collected by the petitioning attorneys in the past help establish the "prevailing market rate"). Still, the fact that the current rate is consistent with the rates Counsel customarily charges is not dispositive on the issue of reasonableness. See In re Parkins, 2011 Bankr. LEXIS 1138, at *13-14 (stating that if it were dispositive, "an attorney could command from the estate any desired hourly rate merely by adopting that rate as his 'usual and customary rate'" (quoting In re Shades of Beauty, Inc., 56 B.R. 946 (Bankr. E.D.N.Y. 1986). As held in Blum, a "reasonable hourly rate" is determined by predicting the "prevailing market rate." Given this concept of a "reasonable hourly rate," the hourly rate that past clients have been willing to pay for Counsel's services is probative.

It is also helpful to examine the type of debtors that Counsel represents in these cases.  All are sophisticated entities with business portfolios comprised of significant assets and liabilities. Presumably, these debtors sought out bankruptcy attorneys who were competent and experienced enough to protect their interests in handling relatively complex legal matters, both related and unrelated to bankruptcy law.  See In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 20 (Bankr. S.D.N.Y. 1991) ("Corporate reorganizations present substantial legal issues in addition to, but separate from, bankruptcy law. . . .  In corporation reorganizations today, the retained attorney must often have access to additional legal expertise not thought of as 'bankruptcy law' expertise."). To obtain this type of quality representation, the debtors sought out attorneys of the caliber of Counsel, with the understanding that such representation would command higher hourly rates.

The ability to retain top-quality representation in bankruptcy is precisely why Congress shifted the policy underlying the compensation of bankruptcy professionals to one where the free market plays a larger role.  In passing the Bankruptcy Reform Act of 1978 (the "1978 Reform Act"), Congress abandoned the "strict economy" approach that had been adopted by many courts as a method for compensating bankruptcy professionals.  See Drexel Burnham Lambert Group, 133 B.R. at 20 (discussing perceived problems with "strict economy" approach and explaining policy-shift effectuated by 1978 Reform Act).  The 1978 Reform Act drastically shifted the policy to one where the free market had greater relevance, specifically so that the "best and the brightest professionals are encouraged to practice in our bankruptcy courts."  Id. (quoting In re RBS Indus., Inc., 104 Bankr. 579, 582 (Bankr. D. Conn. 1989)).

The recognized reasons for allowing the free market to serve a greater role in determining the reasonableness of compensation under Section 330 support Counsel's ability to charge higher

hourly rates.  See, e.g., Drexel Burnham Lambert Group, Inc., 133 B.R. at 16 ("In . . . insisting on a standard established by the free market . . . Congress explicitly made known its intention to avoid the problems . . . created by the prior standard, that is, low fees drive competent professionals away from bankruptcy[.]").  In short, allowing Counsel to charge fees commensurate with the value of their services enables debtors to choose and retain extremely competent legal representation and supports the legislative intent not to limit debtors to "lower priced" options.

Bankruptcy courts must also consider factors other than past and current rates charged, many of which weigh in favor of concluding that Counsel's hourly rates are reasonable.  Parkins, 2011 Bankr. LEXIS 1138, at *13-14; Drexel Burnham Lambert Group, 133 B.R. at 15, 22 (stating that the review of professional fees is "distasteful to the Court and demeaning to the professional" but is "mandated by the Bankruptcy Code, § 330," and that "attorneys' rates and practices that are accepted by the market must be utilized as one of the criteria in establishing compensation under § 330").

The court places great weight on the fact that the very same rates that are the subject of the instant objection have previously been approved by the other two bankruptcy judges within this district in other chapter 11 cases.  In recognizing that bankruptcy judges have an independent obligation to determine whether the compensation requested is reasonable,  In re Rainwater, 2007 Bankr. LEXIS 1234, at *2 (Bankr. D. Md. Jan. 17, 2007) (citing In re Busy Beaver Bldg. Ctrs., 19 F.3d 833 (3d Cir. 1994)),  the approval of such rates by Judges Leonard and Doub indicates that Counsel's hourly rates are appropriate and reasonable.

Further, the level of skill required to represent the debtors' interests in these cases supports the reasonableness of Counsel's hourly rates.  See Johnson, 488 F.2d at 717-19 (listing "the skill

requisite to properly perform the legal service" as a factor affecting reasonableness). Counsel is representing ten affiliates whose bankruptcy cases have been consolidated for administrative purposes. The amounts involved in these cases are significant, with each affiliate listing assets and liabilities between $10,000,000 and $50,000,000 on their respective petitions. See Johnson, 488 F.2d at 717-19 (listing "the amount involved" as a factor affecting reasonableness). In addition to bankruptcy-specific matters, these cases have involved intense litigation against the debtors' largest secured creditor. See Brier Creek Corp. Ctr. Associates L.P, v. Bank of America, N.A., A.P. No. 12-00121-8-SWH.[4] A wide variety of legal issues have been presented in both the main bankruptcy cases and the adversary proceeding, including, but certainly not limited to, complicated lease assumptions involving subordination agreements and jurisdictional disputes arising out of loan arbitration clauses. See Drexel Burnham Lambert Group, 133 B.R. at 20 (Bankr. S.D.N.Y. 1991) ("Corporate reorganizations present substantial legal issues in addition to, but separate from, bankruptcy law.").

Considering the complexity of these cases and the amount of litigation involved, Counsel has rendered its legal services in a highly efficient manner, as is detailed in the itemization attached to Counsel's application for compensation. See 11 U.S.C. § 330(a)(3)(D) (listing "whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed" as a factor affecting the reasonableness of compensation). The court is persuaded that Mr. Northern's and Ms. Parrott's proficiency in corporate reorganizations enabled them to provide more effective and efficient

---

[4]While special counsel was employed to represent the debtors in the adversary proceeding, Counsel was significantly involved in this litigation.

representation in these cases than could have been provided by attorneys with less skill and experience. This justifies charging a higher hourly rate. See Blum, 465 U.S. at 898 ("There may be cases, of course, where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue. In those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates.").

Finally, the quality of Counsel's representation in these cases benefitted not only the debtors, but also the estates' creditors. See Blum, 465 U.S. at 899-900 (stating that "quality of representation" and "results obtained" are reflected in the reasonable hourly rate); see also Perdue, 130 S. Ct. at 1674 (explaining that "superior results are relevant only to the extent it can be shown that they are the result of superior attorney performance"). For example, Counsel successfully reduced the debtors' largest secured creditor's claim by approximately $16,000,000 worth of attorneys' fees. See In re Brier Creek Corp. Center Assoc. Ltd. P'ship, Case No. 12-01855-8-SWH, Order Regarding Debtors' Limited Objections to Claims of Bank of America (Bankr. E.D.N.C. Jan. 18, 2013). In addition, Counsel was able to confirm a reorganization plan repaying all allowed claims in full. See In re Brier Creek Corp. Center Assoc. Ltd. P'ship, Case No. 12-01855-8-SWH, Order Confirming First Amended and Restated Chapter 11 Plan (Bankr. E.D.N.C. Apr. 26, 2013). The quality of representation, and the results achieved therefrom, provide additional support for the reasonableness of Counsel's rates.

In sum, these factors—rates of other chapter 11 debtors' attorneys in this district, the skill and experience of Counsel, Counsel's customary rates, the size and sophistication of the debtors, the approval of the same rates by other judges in this district, the skill required to properly perform

11

the legal services, the amount involved in the cases, the efficiency in providing legal services, the quality of representation, and the results achieved—when taken together, demonstrate that Counsel's hourly rates for the services provided in the instant bankruptcy cases are clearly reasonable. The rates charged accurately reflect what the court considers to be the "prevailing market rate" for Counsel's representation in these cases. The foregoing fee analysis is, obviously, extremely fact intensive; although the factors listed above will be instructive in other cases, the court's conclusions are narrow ones and applicable to these cases only.

Finally, with respect to the Bankruptcy Administrator's objection to the increase in hourly rates during the pendency of the case, the court finds that the increase of $30 in Counsel's hourly rates beginning in January 2013 was reasonable. Counsel's fee agreement with the debtors provides that the hourly rates charged at the commencement of the bankruptcy proceedings would be subject to adjustment. The court places heavy weight on the fact that sophisticated debtors entered into an engagement letter which expressly put them on notice that yearly fee reevaluations would take place and that increases would be made. Further, while an increase of rates during a case may not always be permissible, the foregoing reasoning, which concludes that the amount of Counsel's rates is justified, easily supports the reasonableness of Counsel's increase in rates beginning in January 2013. Also significant is that the exact percentage increase in rates was minor relative to the size of the debtors and their ability to pay for legal services, and that such an increase does not detrimentally affect creditors in light of the 100% payment to creditors provided in the confirmed plan. Finally, Counsel did not increase its fees for nearly nine months into the case and did so as part of its normal annual fee rate assessment.

For the foregoing reasons, the Bankruptcy Administrator's objection is **DENIED**, and

Counsel's application for compensation is **ALLOWED**.

**SO ORDERED**.

**END OF DOCUMENT**
